UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-23062-SCOLA/GOODMAN

"IN ADMIRALTY"

P&L TOWING AND TRANSPORTATION, INC.,

Plaintiff,

v.

M/V *GAR-DEN S*, a 1951 62-foot steel hull tug
built by RTC Shipbuilding Corporation, bearing
United States Coast Guard Official Number 262196,
her engines, tackle, furniture, furnishings, apparel
and appurtenances, *in rem*, et al.,

Defendants.

_____/

## REPORT AND RECOMMENDATIONS
## <u>ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT</u>

This Cause is before the Undersigned following receipt of Plaintiff's Motion for

Default Judgment [ECF No. 27], which was referred to the Undersigned by United States

District Court Judge Robert N. Scola ("the District Court"). [ECF No. 29]. The

Undersigned has reviewed the motion and other relevant portions of the record.[1] For the

_____

[1]      Defendant has not filed a response to Plaintiff's motion, and the time to do so has
now expired.

reasons given below, the Undersigned **RESPECTFULLY RECOMMENDS** that the District Court **GRANT IN PART** Plaintiff's motion.

## I.   Background

Plaintiff P&L Towing Transportation, Inc. ("P&L" or "Plaintiff") filed a complaint against Defendants M/V GAR-DEN S, *in rem* ("Defendant Vessel"), Bluewater Construction and Rentals Ltd. and Tyler Macintosh, *in personam*, seeking damages and a judicial sale of Defendant Vessel, a 62-foot steel hull tug. [ECF No. 1, p. 1]. As relief, P&L seeks to recover towing and storage costs for Defendant Vessel and to procure its judicial sale. *Id.* at pp. 6-7. Defendants did not respond to the Complaint, and the time to do so has passed. On January 28, 2022, P&L filed a Motion for Clerk's Entry of Default [ECF No. 24], which was entered the same day as to Defendant Vessel. [ECF No. 25].

After entry of the Clerk's default, Bluewater Construction and Rentals, Ltd. and Tyler MacIntosh were dismissed without prejudice as defendants. [ECF No. 28]. P&L now seeks entry of a default judgment against Defendant Vessel. [ECF No. 27]. Because Plaintiff has already obtained Clerk's Entry of Default, the matter is ripe for review under Local Admiralty Rule C(9).

## II.   Legal Standards

### A.  Default Judgment

Federal Rule of Civil Procedure 12(a)(1)(A)(i) states that a defendant has 21 days from the date of service to respond to a complaint. "When a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a final default judgment based solely on the existence of a clerk's default. *Alfa Corp.*, 560 F. Supp. 2d at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id*. (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011) (finding that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

III.   **Analysis**

     **A.  Liability**

Here, Plaintiff seeks default judgment on Count I of its complaint -- a maritime lien foreclosure action against Defendant Vessel pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31326 and 31342. [ECF No. 27, p. 10]. Section 31342 provides that "a person providing necessaries to a vessel on the order of the owner -- (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel." 46 U.S.C. § 31342(a)(1)-(3).

To establish a maritime lien on a vessel and acquire the ability to bring a civil action in rem to enforce the lien, the Eleven Circuit applies a three-prong test based on the plain language of the statute. *See Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1244 (11th Cir. 1999); *see also Barcliff, LLC v. M/V DEEP BLUE, IMO No. 9215359*, 876 F.3d 1063, 1068 (11th Cir. 2017). The three-prong test requires a plaintiff to prove that it: "(1) provide[d] necessaries; (2) to a vessel; (3) on the order of the owner or agent." *Galehead,* 183 F.3d at 1244. P&L has established all three prongs.

Under § 31301(4), "necessaries include repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C.A. § 31301(4). The admitted allegations in Plaintiff's well-pleaded Complaint establish that it towed and stored Defendant Vessel. [ECF No. 1, pp. 2-5]. Accordingly, under both the plain language of the statute, *see* 46 U.S.C.A. § 31301(4), and Eleventh Circuit precedent, Plaintiff has provided necessaries. *See Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 875 (11th Cir. 2010)

(recognizing towage as a "necessary"); *Inbesa Am., Inc. v. M/V Anglia*, 134 F.3d 1035, 1037-38 (11th Cir. 1998) (recognizing dockage as a necessary); *Moore v. M/V Sunny USA*, 847 F. App'x 603, 607 (11th Cir. 2021) (recognizing dockage as a necessary). Plaintiff has met the first prong.

P&L has also met its burden to establish that the necessaries were provided to "a vessel." 46 U.S.C. § 115 refers to section 3 of title 1 for its vessel definition, which provides that a vessel "includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. In deciding whether a watercraft is a vessel, "the focus . . . is the craft's capability, not its present use or station." *Bd. of Comm'rs of the Orleans Levee Dist. v. M/V Belle of Orleans*, 535 F.3d 1299, 1310 (11th Cir. 2008). Thus, whether the watercraft is currently inoperable is of no consequence to its status as a vessel.

Defendant Vessel, a dead, 62-foot, steel hull tug[2] [ECF No. 1, p. 1], is clearly capable of being used as a means of transportation on water. *See Moore*, 847 F. Aff'x at 607-08 ("A 'vessel' is a structure which 'a reasonable observer, looking to [its] physical characteristics and activities, would consider it designed to a practical degree for carrying people or

---

[2]      Tugs are regularly used to tow other vessels. *See, e.g., S. C. Loveland, Inc. v. E. W. Towing, Inc.*, 415 F. Supp. 596 (S.D. Fla. 1976), aff'd, 608 F.2d 160 (5th Cir. 1979) (a case involving a tug towing another vessel); *Naviera Tabago S. A. v. Sprigg Carroll*, 394 F. Supp. 1354 (S.D. Fla. 1975) (same); *Tug Sea Hawk v. Sococo, Ltd.*, 707 F. Supp. 1306 (S.D. Fla. 1988), aff'd sub nom. *Sococo, Ltd. v. Sterling Mar.*, 894 F.2d 411 (11th Cir. 1990) (same).

things over water.'" (quoting *Lozman v. City of Riviera Beach*, 568 U.S. 115, 121, 133 S. Ct. 735, 184 L.Ed.2d 604 (2013))).

As for the third prong, P&L's Complaint alleges that it provided necessaries to Defendant Vessel "on the order of the owner or agent." *Galehead*, 183 F.3d at 1244. P&L attached as an exhibit the contract between it and Defendant Vessel's agent, which established the necessaries that P&L would provide. [ECF No. 1-1]. Under § 31341, an owner of the vessel, a person entrusted with management of the vessel, or an officer or agent of the vessel all have the authority to procure necessaries for the vessel. 46 U.S.C.A. § 31341(a).

The Eleventh Circuit has held that a contract for necessaries "is generally sufficient to show they were performed 'on the order of' the vessel's owner." *Moore*, 847 F. App'x at 608 (citing *Barcliff*, 876 F.3d at 1070-71). In *Galehead*, the Eleventh Circuit reaffirmed this principle, and extended the doctrine to include the vessel's charterer. 183 F.3d at 1245.

Here, Tyler Macintosh -- the President of Bluewater and the signatory of the contract on behalf of Bluewater [ECF No. 1-1] -- qualifies as a person entrusted with management of the vessel. [ECF No. 1, p. 8]. Therefore, the contract is sufficient evidence that the necessaries Plaintiff provided were on order of the vessel's owner or agent.

Based on the foregoing, the Undersigned **respectfully recommends** that the District Court find that Plaintiff successfully established a cause of action under 46 U.S.C. § 31342.

### B. Damages

In the Eleventh Circuit, damages may be awarded via a default judgment if a detailed affidavit(s) establishes the necessary facts. *See Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded only if the record adequately reflects the basis for award via a 'hearing or a demonstration by detailed affidavits establishing the necessary facts.'" (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979) (per curiam))); *see also Young Apartments, Inc. v. Town of Jupiter, Fla.*, 503 F. App'x 711, 720 (11th Cir. 2013) (awarding fees and costs in conjunction with a default judgment when the supporting documents for those fees and costs included an affidavit); *Brown v. Everest Moving & Storage, Inc.*, No. 12-62530-CIV, 2013 WL 12126001, at *2 (S.D. Fla. Aug. 20, 2013) (finding that default damages can be ascertained through detailed affidavits); *Barquero v. Krypton Pest Control Co.*, No. 1:17-CV-22606-UU, 2017 WL 11618795, at *1 (S.D. Fla. Aug. 16, 2017) (same).

As damages, P&L seeks $82,041.00 for breach of contract, $42,059.56 in *custodia legis* fees, prejudgment interest, and attorney's fees and costs. [ECF No. 27, p. 18]. Each category will be addressed in turn.

#### 1. Necessaries

In a maritime lien case, a plaintiff can recover damages resulting from a breach of contract. *Galehead,* 183 F.3d at 1247; *see also Addax Energy SA v. M/V Yasa H. Mulla*, 987 F.3d 80, 86 (4th Cir. 2021) ("The holder of a maritime lien may . . . seek damages against

the party responsible for breach of contract."). Here, P&L seeks $82,041.00 for unpaid

necessaries incurred as a result of the contract breach: $46,559.00 in towage costs and

$35,482.00 in storage costs. [ECF No. 27, pp. 18-19].

Plaintiff asserts that these costs were incurred from providing necessaries --

storage and towage -- and are therefore recoverable. *Id.* Necessaries stemming from a

contract breach are considered services that benefit the ship, and are recoverable as

damages. *Bradford Maine, Inc. v. M/V Sea Falcon,* 64 F.3d 585, 589 (11th Cir. 1995); *see also*

*Robbie's of Key West v. M/V Komedy III,* 470 F. Supp. 3d 1264, 1269 (S.D. Fla. 2020) (finding

that "what a plaintiff may recover for a maritime lien is strictly limited as to what can

reasonably be recovered" (citing *Bradford Marine, Inc.*, 64 F.3d at 588-89)). Specifically, the

*Bradford Marine, Inc.* Court identified "repairs, supplies, towage, and the use of a dry

dock" as services that are for the benefit of the ship and, thus, are recoverable. 64 F.3d at

589. Thus, both towage expenses and storage expenses are recoverable.

Plaintiff substantiates its $46,559.00 in towage expenses with an itemized invoice

detailing the towing costs. [ECF No. 1-2]. Therefore, the Undersigned **respectfully**

**recommends** that the District Court award Plaintiff its full towing costs.

For its $35,482.00 in storage expenses, Plaintiff substantiates the request with an

affidavit from its President. [ECF No. 27-2]. The affidavit indicates that Plaintiff stored

the vessel from February 17, 2021, through October 1, 2021 (the date of the vessel's arrest),

a total of 226 days. [ECF No. 27-2, ¶¶ 7, 13]. During this time, Plaintiff charged $157.00

per day in storage for a total of $35,482.00. *Id*. Accordingly, the Undersigned **respectfully recommends** that the District Court award Plaintiff its storage costs incurred from February 17, 2021, through October 1, 2021.

In summary, the Undersigned **respectfully recommends** that the District Court award Plaintiff its full $82,041.00 in necessaries damages incurred due to the contract breach.

### 2. *Custodia legis* fees

Next, Plaintiff seeks $42,059.56 in *custodia legis* fees to cover the expenses it incurred acting as the substitute custodian from October 1, 2021, until February 2, 2022 (the date it filed the instant motion), as well as any additional expenses incurred through the date Defendant Vessel's sale is confirmed by the Court. [ECF No. 27, pp. 18-19]. The Eleventh Circuit has recognized that *custodia legis* fees are recoverable as "expenses of justice." *See Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 465 F.3d 1267, 1272 (11th Cir. 2006) (quoting *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1561 (11th Cir. 1987)).

Applying this principle, courts throughout this District regularly permit recovery of necessaries provided to a ship after its arrest. *See, e.g., Rybovich Boat Co., LLC v. M/Y BLUE STAR*, 546 F. Supp. 3d 1270, 1275 (S.D. Fla. 2021) (awarding *custodia legis* fees); *Staats v. M/Y Perseverance II*, 2017 WL 7796314, at *2 (S.D. Fla. May 17, 2017) (same); *M&M Priv. Lending Grp., LLC v. M/Y Ciao Bella*, No. 19-CV-62350, 2020 WL 5499102, at *1 (S.D.

Fla. Sept. 3, 2020), report and recommendation adopted, No. 19-62350-CIV, 2020 WL 5500734 (S.D. Fla. Sept. 11, 2020) (same); *Marina Resorts, LLC v. S/V "ARGO,"*, No. 15-60149-CIV, 2015 WL 12803702, at *1 (S.D. Fla. May 12, 2015) (same).

Plaintiff was appointed substitute custodian on September 23, 2021. [ECF No. 20], and Defendant Vessel was arrested on October 1, 2021 [ECF No. 21]. P&L's President's affidavit states that P&L charged $217.00 per day for dockage while acting as the substitute custodian. [ECF No. 27-2, pp. 3-4]. As its fee for undertaking the responsibilities and liabilities attendant to acting as a substitute custodian, P&L also charged an additional $100.00 per day. *Id.* at p. 4. Thus, in total, P&L incurred and will continue to incur $317.00 per day while acting as the substitute custodian.

Plaintiff also seeks to include a 7% sales tax on the $216.00 per day dockage expense. Plaintiff cites no law supporting its claim that the court should award this tax nor any law supporting its claim that a 7% sales tax is applied to dockage expenses. Nor does the attached affidavit include any information on sales tax other than to provide pre-sales tax estimates. Courts in this district have found it appropriate to deny a plaintiff's unsupported request for sales tax as a *custodia legis* expense. *Staats v. M/Y GOLDEN COMPASS*, No. 16-CV-62202, 2017 WL 6508385, at *2 (S.D. Fla. Dec. 20, 2017) ("[The plaintiff] does not explain why it is charging a six percent sales tax on custodial services . . . [t]hus, the Court sees no basis to award sales tax as a *custodia legis* expense."); *cf. Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 1:18-CV-25337-KMM, 2020

WL 7481302, at *3 (S.D. Fla. May 20, 2020) ("The burden is on the plaintiff to prove the amount of damages owed.").

Because Plaintiff has failed to provide any authority on either the issue of entitlement or the appropriate sales tax percentage, this portion of its request should be denied.

Accordingly, the Undersigned **respectfully recommends** that Plaintiff be awarded $39,308.00 ($2,751.56 less than the requested amount) in *custodia legis* fees ($317.00 x 124 days). Further, the Undersigned **respectfully recommends** that Plaintiff also be awarded the additional *custodia legis* fees incurred from February 3, 2022, through the date of the judicial sale of the vessel, at the rate of $317.00 per day. *See Dresdner Bank AG*, 465 F.3d at 1267 (finding that "claims for necessaries provided to a ship after its arrest" are paid in priority to all lien claims).

### 3. Prejudgment interest

Plaintiff seeks prejudgment interest at the federal post-judgment interest rate. [ECF No. 27, p. 18]. Prejudgment interest is presumptively proper in maritime cases -- it takes an extraordinary circumstance for prejudgment interest to be denied. *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 198 (1995) ("Despite admiralty's traditional hospitality to prejudgment interest, however, such an award has never been automatic.").

Although prejudgment interest is presumptively appropriate, in an admiralty case, the injured party is not necessarily entitled to the contractual prejudgment interest rate but, rather, may be limited to an amount which only reasonably compensates it for its loss. *Robbie's of Key West*, 470 F. Supp. 3d at 1270 (citing *Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148, 1155 n.9 (5th Cir. 1977)). In *Robbie's of Key West*, the court found the post-judgment interest rate under 28 U.S.C. § 1961 reasonable. *Id*.

Plaintiff concedes that it has not put forth evidence supporting a claim to its rate under the contract and, thus, seeks only the statutory rate under 28 U.S.C. § 1961. [ECF No. 27]. Given the applicable law and Plaintiff's concession, the Undersigned **respectfully recommends** that the District Court award Plaintiff prejudgment interest calculated in accordance with 28 U.S.C. § 1961.

### 4. Attorney's Fees and Costs

P&L's request for Attorneys' fees is premature. Local Rule 7.3(a)(1) (motions for attorneys' fees "shall be filed and served within sixty (60) days of the entry of the final judgment or order giving rise to the claim" (cleaned up)). P&L has not yet received a final judgment or order giving rise to the claim, so the sixty-day period to file this motion has not yet begun.

Accordingly, the Undersigned **respectfully recommends** the District Court **deny without prejudice** P&L's request and direct P&L to file a supplemental motion/memorandum that complies with the Local Rules detailing the attorneys' fees

and costs incurred in connection with this proceeding, so that those fees and costs may be awarded.

### 5. Conclusion on Damages

Overall, the Undersigned **respectfully recommends** that Plaintiff be awarded $82,041.00 for necessaries and $39,308.00 for *custodia legis* fees and expenses incurred as of the date of the motion for a total of $121,349.00 ($2,751.56 less than the requested amount). The Undersigned also **respectfully recommends** that the District Court award Plaintiff additional *custodia legis* fees and expenses from February 3, 2022, through the date of the judicial sale of the vessel, at a rate of $317.00 per day. Finally, the Undersigned **respectfully recommends** that the District Court award Plaintiff prejudgment interest calculated in accordance with 28 U.S.C. § 1961.

### C. Judicial Sale

In addition to monetary damages, Plaintiff seeks a judicial sale of the vessel and the right to credit bid its judgment at that sale. [ECF No. 27, p. 18]. Once a plaintiff establishes a maritime lien (as P&L has done), § 31342 permits the plaintiff to "bring a civil action in rem to enforce the lien," 46 U.S.C. § 31342(a)(2), which allows the maritime lienholder to proceed against the vessel directly. *See Crimson Yacht*, 603 F.3d at 868 ("Maritime liens differ from other common law liens in that a maritime lien is 'not simply a security device to be foreclosed if the owner defaults'; rather, a maritime lien converts

the vessel itself into the obligor and allows injured parties to proceed against it directly." (quoting *Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904, 908-09 (4th Cir. 1981)).

In this District, the right to proceed against the vessel directly includes the lienholder's "right to appropriate the vessel, have it sold, and be repaid from the proceeds." *Harris v. M/V FATHOMS O'FUN*, No. 10-62038-CV, 2011 WL 13319377, at *3 (S.D. Fla. July 18, 2011), report and recommendation adopted, No. 10-62038-CIV, 2011 WL 13319373 (S.D. Fla. Aug. 18, 2011).

Because P&L is properly proceeding against Defendant Vessel directly, the Undersigned **respectfully recommends** that the District Court authorize a judicial sale.

At the judicial sale, P&L should be entitled to credit bid the amount of its judgment at the auction. "If the vessel is not sold at or over the minimum bid set by the Court, a party having a valid maritime lien who has paid *custodia legis* expenses and fees of the marshal may be permitted to "bid on its credit," or "credit bid," in lieu of paying cash at the public sale of the vessel." *Harris*, 2011 WL 13319377 at *3; *see also Bank of Am. v. Hoy*, No. 6:10-CV-1029, 2010 WL 5463103, at *2 (M.D. Fla. Dec. 29, 2010) (allowing the plaintiff to credit bid its judgment in a maritime lien case); *but see Moore v. M/V Sunny USA*, No. 18-CV-81181, 2019 WL 10784577, at *2 (S.D. Fla. Feb. 21, 2019) (not permitting a credit bit when the plaintiff also sought to include attorney's fees in its credit bid).

Accordingly, the Undersigned **respectfully recommends** that Plaintiff be permitted to credit bid the amount of its judgment at the judicial sale of the vessel.

## IV.    Conclusion

Because P&L satisfies all requirements of 46 U.S.C. § 31342, the Undersigned **respectfully recommends** that the District Court enter a Final Judgment in favor of P&L.

Further, the Undersigned also **respectfully recommends** that the District Court award P&L damages in the amount of **$121,349.00** plus prejudgment interest, as well as any additional *custodia legis* expenses incurred from February 3, 2022, through the date of the judicial sale of the vessel, at a rate of $317.00 per day.

Moreover, the Undersigned also **respectfully recommends** the judicial sale of the Defendant Vessel and that Plaintiff be permitted to credit bid its judgment at the judicial sale.

Finally, the Undersigned **respectfully recommends** that the District Court deny without prejudice Plaintiff's request for attorney's fees and instruct Plaintiff to file the appropriate motion in accordance with the Local Rules.

## V.    Objections

The parties will have fourteen days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the United States District Judge. Each party may file a response to the other party's objection within fourteen days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions

15

contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

   **RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on May 13, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
The Honorable Robert N. Scola
All counsel of record